## Case No. 3,440.

### In re CROUGHWELL.

[9 Ben. 360;[1] 17 N. B. R. 337.]

District Court, S. D. New York. March Term, 1878.

INVALID ASSIGNMENT UNDER STATE LAW—FILING INVENTORY—RECORDING.

1. The provision of section 3 of the act of the legislature of New York, passed June 16, 1877 (Laws N. Y. 1877, c. 466, p. 543), in regard to voluntary assignments for the benefit of creditors, that, if "an inventory shall not be made and filed within thirty days by the debtor or the assignee, the assignment shall be void," means, that the assignment is valid, during the thirty days, to vest the title in the assignee, but is subject to become invalid if the inventory is not filed within the thirty days; but, when it so becomes invalid, the invalidity does not relate back to the date of the assignment, so as to authorize a court to declare that the title is thereafter to be held never to have passed from the assignor, or never to have vested in the assignee. The provision of said act as to the recording of the assignment, considered.

[Cited in Hunker v. Bing, 9 Fed. 281.]

2. C. made a voluntary assignment December 20th, 1877. A sheriff, on January 5th, 1878, levied an execution on property covered by the assignment, in favor of a creditor. On January 9th a petition in bankruptcy was filed in this court against C., and he was adjudged a bankrupt January 19th. The assignee in bankruptcy having obtained possession of said property, the sheriff applied to this court, in March, 1878, claiming that said voluntary assignment was void because of the non-filing of such inventory, and that the voluntary assignee never obtained any title to the property, and praying that the property be applied on the execution. The assignee in bankruptcy claimed to hold the property on the ground that the voluntary assignment was invalid as to him; and the application of the sheriff was refused, to allow the assignee in bankruptcy an opportunity to avoid the voluntary assignment and recover the property.

[Cited in Olney v. Tanner, 10 Fed. 107.]

[In the matter of James Croughwell.

[Petition by the sheriff of the county of New York for the delivery of certain of the bankrupt estate, or for sufficient of the proceeds thereof to satisfy an execution in his hands.]

Vanderpoel, Green & Cuming, for the motion.

Foster & Adams, opposed.

BLATCHFORD, District Judge. The bankrupt, on the 20th of December, 1877, made a voluntary assignment of his estate to an assignee for his creditors, one Bessicks. On the 5th of January, 1878, Goodman & Mayer, creditors of his, recovered a judgment against him and issued to the sheriff an execution against his property, under which a levy was made on the property embraced in said assignment. On the 9th of January, 1878, a petition in involuntary bankruptcy was filed against the bankrupt, and he was adjudged a bankrupt on the 19th of January, 1878. An assignee in bankruptcy has been appoint-

[1] [Reported by Robert D. Benedict, Esq., and Benj. Lincoln Benedict, Esq., and here reprinted by permission.]

ed, who has possession of the property. Neither the bankrupt nor Bessicks filed, within thirty days after the date of the voluntary assignment, the inventory required by the third section of the state act of June 16, 1877 (Laws N. Y. 1877, c. 466, p. 543). The sheriff now presents to this court a petition, claiming that, because of the non-filing of such inventory, the assignment to Bessicks "was and is void and of no effect," and that Bessicks never obtained any title to the property. The petition prays that the execution may be declared a lien on all the property of the bankrupt; that it be delivered to the sheriff, and he be allowed to sell it and apply the proceeds on the execution; or that, if it be sold by the assignee in bankruptcy, he pay over to the sheriff sufficient of the proceeds to satisfy the execution.

The third section of the state act of 1877 provides, that if "an inventory shall not be made and filed within thirty days, by the debtor or the assignee, the assignment shall be void." This language was not contained in the prior state act. The prior provision was section 2 of the act of April 13, 1860, as amended by section 1 of the act of June 4, 1874 (Laws N. Y. 1874, c. 600, p. 824). That provision was, that the debtor should, at the date of the assignment, or within twenty days thereafter, make and deliver the inventory of creditors and property, but, if he should not, the assignment should not "for such reason become invalid or be ineffectual," but the assignee might, within six months after the date of the assignment, file an inventory of the property which he could find. The second section of the act of 1860 (Laws N. Y. 1860, c. 348, p. 594), before its amendment in 1874, provided merely that the debtor should, at the date of the assignment, or within twenty days thereafter, make and deliver the inventory of creditors and property. It did not contain the provision that the assignment should not for such reason become invalid or be ineffectual. Under the act of 1860, it was held by the court of appeals of New York, in 1868, in Juliand v. Rathbone, 39 N. Y. 369, that the intention of the statute was to require the inventory "to be made as a necessary part of a valid assignment, and as a prerequisite of vesting an absolute title to the property in the assignee;" that during the twenty days "an inchoate title" was vested in the assignee, "good against creditors, provided it was thereafter perfected by a compliance" with the act as to the inventory and the bond; and that, "in case of failure so to comply, the assignment must be adjudged void." Section 3 of the act of 1860 required the assignee to file a bond within thirty days after the date of the assignment, "and before he shall have power or authority to sell, dispose of, or convert to the purposes of the trust, any of the assigned property." The case of Juliand v. Rathbone, above cited, held that the assignee did not acquire title to the property absolutely, until

he gave the security; that a strict observance of the requirements as to the inventory and the bonds was essential to the validity of the assignment; and that a non-compliance rendered the assignment "void as to creditors, whenever their rights to the property attach." After this decision the amendment of 1874 was made, to the effect above set forth, declaring, that if the debtor failed to make and deliver the inventory within the twenty days, the assignment should not "for such reason become invalid or be ineffectual," and allowing the assignee to file an inventory of property within six months, but not declaring, as in the act of 1877, that, in case an inventory should not be filed by either the debtor or the assignee within a specified time, the assignment should be void. The act, as it stood after the amendment of 1874, came before the court of appeals of New York, in Produce Bank v. Morton, 67 N. Y. 199, and it was there held, that the intention of the act of 1874, in declaring that the omission to make and deliver the inventory should not "invalidate the assignment," was to abrogate the rule laid down in Juliand v. Rathbone; that the provision allowing the assignee within six months to file an inventory, was not intended as a condition, the breach of which should invalidate the assignment; and that it could hardly be supposed that it was the intention of the legislators to leave it uncertain, during the six months, whether the title to the property was in the assignee, or to deprive him, during the interval, of the power of making any valid disposition of it.

The third section of the act of 1877 retains the provision, that if the debtor does not make and deliver the inventory within the twenty days, the assignment "shall not for that reason become invalid," and then provides that the assignee may, within thirty days after the date of the assignment, make and deliver as complete an inventory as he can, and that, "in case an inventory shall not be made and filed within thirty days, by the debtor or the assignee, the assignment shall be void."

I am not referred to any decision in the courts of this state as to the proper construction of this new provision in the third section of the act of 1877. The fifth subdivision of that section, in which this new provision is found, contains language all of which must be construed together. The debtor is to deliver the inventory at the date of the assignment, or within twenty days thereafter. In case he does not, the assignment is not "for that reason" to "become invalid," but the assignee is to have ten days more, or thirty days in all from the date of the assignment, to deliver such inventory as he can. If neither debtor nor assignee files an inventory within the thirty days, "the assignment shall be void." What is the meaning of the words "be void"? Do they mean anything different from the words "become

void"? or anything different from the words "become invalid," used in the first part of the subdivision? If the assignment does not "become invalid" at the end of the twenty days, it must be valid at that time, and it must have been valid from its date. If valid at the end of the twenty days, its validity must continue at least till the end of the thirty days. The assignee is required, by section 5 of the act of 1877, to file a bond within thirty days after the date of the assignment. The same section provides, that, until the bond is filed, the assignee shall not have "any power or authority to sell, dispose of or convert to the purposes of the trust, any of the assigned property." So far this is the same provision as in section 3 of the act of 1860. But section 5 of the act of 1877 goes on to provide, that, "in case the debtor shall fail to present such inventory within the twenty days required, then the assignee, before the ten days thereafter shall have elapsed," may apply "for leave to file a provisional bond, until such time as he may be able to present the schedule or inventory, as hereinbefore provided." The eighth section of the same act provides, that a failure to file any bond required by the act "will not deprive the county judge of his power over the assignee or the trust estate." It certainly is contemplated by section 5, that the assignee may, after the twenty days have expired, and before the thirty days have expired, file such a bond, that he can, before the thirty days have expired, and before he files an inventory, sell and dispose of the assigned property. If so, he must have the title to it, which title does not accrue by the filing of the bond or of the inventory, but by the delivery of the assignment, duly acknowledged, and, perhaps, its recording. It has been recently held by the court of appeals of New York, in Brennan v. Willson, 71 N. Y. 502, under the act of 1860, that the property vested in the assignee by the assignment and its acceptance; that the giving of the statutory security was not a condition precedent to the vesting of the estate; and that the failure to give the security within the time limited did not invalidate the transfer and restore the title to the assignor. The provisions of the act of 1877 in regard to the bond are such as to require the same ruling under that act, even more strongly than under the act of 1860. In analogy to such construction of the provisions in regard to the bond, it must be held to be the meaning of the provisions of the act of 1877 in regard to the inventory, that if none is filed within the thirty days the assignment then ceases to have the validity which up to that time it had. The statute does not say that the assignment shall be held and treated as having been void ab initio. The assignment is regarded as valid to vest the title in the assignee, but is subject to become invalid if an inventory is not filed within the thirty days. But, when it so becomes invalid, the

invalidity does not relate back to the date of the assignment, so as to authorize a court to declare that the title is thereafter to be held never to have passed from the assignor or never to have vested in the assignee.

The petition of the sheriff alleges that the assignment was not recorded until the 29th of December, 1877, "contrary to the law of the state of New York." I find no provision in the act of 1877 as to the recording, except the provision in section 1, requiring that the assignment shall be recorded, and designating where, and a like provision in section 24. But there is no requirement as to when the assignment shall be recorded, unless the provisions of section 1 are to be regarded as requiring that the assignment shall be recorded before it can be regarded as operative. Even if this be so, this assignment was recorded on the 29th of December, 1877.

The only specific objection urged by the sheriff's petition is, that no inventory was filed "within thirty days after the making and recording" of the assignment. The petition also alleges that Bessicks has failed to comply with any of the provisions of the act. If this is intended, as was stated on the hearing, to allege that Bessicks never filed a bond, the observations already made dispose of that point.

The petition in bankruptcy in this case set forth, as an act of bankruptcy, the making, on the 29th of December, 1877, by the bankrupt, when insolvent, to Bessicks, of the assignment in question, with intent to defeat and delay the operation of the statutes of the United States in regard to bankruptcy. The adjudication was made by consent. The property covered by the assignment has come into the possession of the assignee in bankruptcy. He claims to hold it on the ground that the voluntary assignment is invalid as to him. This court must so regard it for the purposes of the present application. Whether it is necessary for the assignee in bankruptcy to bring any suit, or take any other steps, to have the voluntary assignment declared void as to him, or to perfect his title to the property, as against any claim which may be made by the voluntary assignee, or by the creditors, or by this execution creditor, is a question not now presented. The case, as it stands, must be disposed of on the principles laid down by the circuit court for the northern district of New York, in Re Beisenthal [Case No. 1,236]. In that view, the title of the assignee in bankruptcy to the property relates back to the time the voluntary assignment was made, whether the 20th or the 29th of December, 1877, because, apparently, such assignment is, under the bankruptcy statute, voidable as to the assignee in bankruptcy, and he claims the right to have it so declared. Nothing is adduced to show that the voluntary assignment was fradulent in fact. It was valid as against the assignor, and there was no title in the assignor to the property levied on when the execution was issued, and so no leviable interest to which the execution could attach. When the petition in bankruptcy was filed, on the 9th of January, 1878, to which date the title of the assignee relates, the thirty days had not expired, and so the life of the execution, quoad the right which the assignee has acquired, had not commenced. That right is a right to avoid the voluntary assignment and recover the property. He may do so on the ground that such assignment was in fraud of creditors, that is, fraudulent otherwise than as made void by the bankruptcy statute, or on the ground that it was made void by that statute. The assignee will be allowed an opportunity to avoid such assignment and recover the property on any ground which may exist. The petition in bankruptcy alleges, as an act of bankruptcy, that the voluntary assignment was made with an intent to hinder and delay creditors. This may have been so, and, if it was so, the rights of these execution creditors would, doubtless, be different from what, under the decision in Re Beisenthal, they would be if the assignment were only voidable, as made so by the bankruptcy statute.

The motion for the relief prayed for in the petition of the sheriff is denied, with leave to him to renew it hereafter, if so advised.

---

CROUSELLAT (DE TASLET v.). See Case No. 3,827.

CROUSILLAT (DE TASTETT v.). See Case No. 3,828.

CROW (UNITED STATES v.). See Case No. 14,895.

CROWDER (LYNCH v.). See Case No. 8,-637.